## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

In re:                                              )
                                                    )
TOU HOUA THAO and                                   )          Case No. 06-30019
THOR MEE YANG,                                      )
                                                    )
                    Debtors.                        )

## <u>MEMORANDUM ORDER</u>

The issue presently before the Court in this converted Chapter 7 case is who is entitled to the lion's share of a $27,699.93 "flock check" for the pre-conversion production of a flock of turkeys. The contestants are Freedom Bank ("Freedom Bank"), which claims the proceeds as a secured creditor, and the Debtors, Tou Houa Thao and Thor Mee Yang ("Debtors"), who claim that the check constitutes exempt wages and that the assignment held by the bank is an illegal assignment of future wages.

For the reasons set forth below, the Court holds that Freedom Bank is entitled to the assigned portion ($26,400) of the Flock Check.[1]

## BACKGROUND

On June 1, 2005, creditor Freedom Bank made two loans, totaling $440,000, to the Debtors for the purchase and operation of a turkey growing operation. To secure the loans, the Debtors granted Freedom Bank a lien on essentially all of the Debtors' assets, including real property, accounts, proceeds, deposits, and all after-acquired property. The Debtors also entered into an agreement with Freedom Bank, entitled "Assignment of Income," whereby the Debtors assigned to Freedom Bank $26,400 from each settlement payment Debtors received for each flock of turkeys they raised.

Soon thereafter, on June 6, 2005, Debtor Tou Houa Thao ("Thao") entered into a Turkey Growing Contract ("Contract") with Willow Brook Foods, Inc. ("Willow Brook"). Under the terms of the Contract, Willow Brook provided Thao with flocks of turkeys and all the necessary feed, medication, and sanitation products to raise the turkeys, and, in general terms, Thao was required to, among other things, "furnish [the] labor" to raise the turkeys on the Debtors' farm. The contract

---

[1] The following constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052.

did not specify that Thao must personally provide that labor.  Upon completion of the growing period, Willow Brook picked up and processed the mature turkey flock, and Thao was paid according to a "Compensation Schedule," which was primarily based on the number and weight of live turkeys produced.

On January 27, 2006, Debtors filed for protection under Chapter 12 of the Bankruptcy Code. Although the Debtors never formally accepted or rejected the contract with Willow Brook, the Debtors continued to raise and be paid for turkeys under the Contract.  Prior to confirmation of the Debtors' Chapter 12 plan, the Debtors stipulated that payments from Willlow Brook (*i.e.*, flock checks) were to be sent directly to Freedom Bank, and, as adequate protection, Freedom Bank was entitled to retain from each flock check  an amount sufficient to cover the interest on the Debtors' loans.

The Debtors' Chapter 12 plan was confirmed on December 11, 2006.  The confirmation order (the terms of which had been the subject of intense negotiation between Freedom Bank and the Debtors) provided that Freedom Bank "shall be paid by flock check assignments commencing January 2007 and each flock check thereafter until maturity."  The confirmation order also provided that Freedom Bank "retains its lien on and security interest in, and the Debtors hereby confirm such liens and security interests, in all assets and types of assets of the Debtors in which Freedom Bank has a security interest and lien as of the commencement of this bankruptcy case."

On February 27, 2007 the Debtors filed a motion to convert their bankruptcy case from Chapter 12 to Chapter 7.  The same day, Willow Brook picked up from the Debtors a flock of turkeys that had been placed with Debtors on October 16, 2006.  The motion to convert was granted on March 1, 2007, and the Chapter 7 trustee assigned to the Debtors' case, Norman E. Rouse, received the Flock Check, dated April 23, 2007, in the amount of $27,699.93, for the flock picked up on February 27.

Freedom Bank now seeks the turnover of $26,400 of the Flock Check, and for the reasons set forth below, the Court will grant Freedom Bank's request.

**DISCUSSION**

As a preliminary matter, the Court notes that the Debtors have not argued here that Freedom Bank's interest in the Flock Check was cut off by 11 U.S.C. § 552, although such an argument would also be unsuccessful.[2] Rather, the Debtors' sole argument against Freedom Bank's motion for turnover of the Flock Check is that the assignment upon which Freedom Bank bases its right to receive the Flock Check is invalid under Missouri law as an illegal assignment of future wages. The Court rejects this argument for three reasons.

First, the Debtors are judicially and equitably estopped from making this argument. Judicial estoppel precludes a party from taking a position clearly inconsistent with its earlier position if a court has accepted the earlier position and the party asserting the inconsistent position will derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[3] Judicial estoppel applies here because the Debtors' current position that the assignment is invalid is clearly inconsistent with its earlier position advanced in the stipulated confirmation order that the assignment is valid; the Court "accepted" the Debtors' position that the assignment is valid by entering the confirmation order; and the unfairness in allowing the Debtors to alter their position on the validity of the assignment is apparent – the Debtors stipulated to validity of the assignment to obtain Freedom Bank's cooperation in their reorganization, and now that the reorganization hasn't worked out, the Debtors cannot be permitted to deny Freedom Bank the benefit it expected in return for its cooperation, *i.e.*, its portion of the Flock Check. It is this unfairness that also supports the application of equitable estoppel, which prevents a party from denying a state of facts that it has previously asserted to be true if the party to whom the representation was made has acted in reliance on the representation and will be prejudiced by its repudiation.[4]

Second, the document entitled "Assignment of Income" is not, as the Debtors claim, an assignment of wages. Under Missouri law, wages are defined as "all remuneration, payable or paid,

---

[2] Section 552 would not cut off Freedom Bank's security interest in the Flock Check because it constituted a payment on an account fully earned prepetition (per the Debtors' own admission), which payments are excepted from § 552's general rule that property acquired by a debtor post-petition is not subject to any lien resulting from a prepetition security agreement. 11 U.S.C. § 552(b). *See also, In re Bumper Sales, Inc.*, 907 F.2d 1430, 143-38 (4th Cir. 1990); *In re Aerosmith Denton Corp.*, 36 B.R. 116 (Bankr. D. Tex. 1983) (security interest in pre-petition accounts receivable held to extend to proceeds collected post-petition).

[3] *See Stallings v. Hussmann Corp.*, 447 F.3d 1041 (8th Cir. 2006).

[4] *See Total Petroleum, Inc. v Davis*, 822 F.2d 734, 737-38 (8th Cir. 1987).

for *personal* services."[5]    The Contract, however, does not require the Debtors to perform the "personal services of raising birds" as they stated in their Response to Freedom Bank's Motion to Compel Turnover.  Under the Contract's terms, the Debtors were merely required to "furnish labor," which could have been accomplished by hiring third parties to provide labor.[6]  The amount of each flock check was determined by the number and weight of the turkeys produced, not by some measure of personal services rendered.   Furthermore, the Debtors' argument ignores the fact that the Debtors provided the turkey houses, equipment, litter, utilities, and other things necessary to produce a finished turkey flock.

Finally, the Debtors misconstrue the Court's October 13, 2006 Order Resolving U.S. Bank's Motion for Relief from Automatic Stay and Motion to Use Cash Collateral, entered in *In re Yang*, Case No. 06-30287 ("U.S. Bank Order") .  The Debtors cite the U.S. Bank Order for the proposition that an assignment of a flock check is invalid because it constitutes an illegal assignment of wages.  But that is not what the Court ruled.  In that case, the Court denied U.S. Bank relief from the stay on the grounds that the flock check at issue was earned, at least in part, post-petition, so the exception in § 552(b) did not preserve U.S. Bank's interest in that (and future) flock check(s).  There is nothing in the Order or transcript which supports the Debtors' contention that the assignment was invalid because it was an assignment of wages.

## CONCLUSION

For the reasons set forth above, the Court finds that Freedom Bank is entitled to $26,400 of the $27,699.93 Flock Check now being held by the Trustee.  The remainder of the funds shall be divided according to the exemptions claimed by the Debtors, as set forth in Minn. Stat. § 571.922, *i.e.*, 75% to the Debtors and 25% to the Trustee.

**ENTERED** this 6th day of June 2007.


/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

---

[5] Mo. Rev. Stat. § 288.036 (2007) (emphasis added).

[6] To some degree, that is exactly what happened, inasmuch as only one of the Debtors – Thao – signed the Contract, but the other Debtor, Thor Mee Yang, also provided services under the Contract.

A copy of the foregoing was mailed
conventionally or electronically to:
Norman E. Rouse
J. Kevin Checkett
Mark M. Henry